IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SHAREE GONZALES,

                    Plaintiff,

vs.                                        Case No. 14-1013-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff
supplemental security income payments.  The matter has been
fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On February 4, 2013, administrative law judge (ALJ) Rhonda Greenberg issued her decision (R. at 14-25). Plaintiff alleges that she had been disabled since May 26, 2010 (R. at 14). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity after the application date of

September 20, 2010 (R. at 16).  At step two, the ALJ found that
plaintiff had severe impairments of ischemic heart disease,
affective disorder, pulmonary sarcoidosis, and substance abuse
(R. at 16).  At step three, the ALJ determined that plaintiff's
impairments do not meet or equal a listed impairment (R. at 16).
After determining plaintiff's RFC (R. at 18), the ALJ determined
at step four that plaintiff is unable to perform past relevant
work (R. at 24).  At step five, the ALJ found that plaintiff
could perform jobs that exist in significant numbers in the
national economy (R. at 24-25).  Therefore, the ALJ concluded
that plaintiff was not disabled (R. at 25).

**III.  Did the ALJ err in the relative weight given to the
medical source opinions?**

The opinions of physicians, psychologists, or psychiatrists
who have seen a claimant over a period of time for purposes of
treatment are given more weight than the views of consulting
physicians or those who only review the medical records and
never examine the claimant.  The opinion of an examining
physician is generally entitled to less weight than that of a
treating physician, and the opinion of an agency physician who
has never seen the claimant is entitled to the least weight of
all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).
When a treating source opinion is inconsistent with the other
medical evidence, the ALJ's task is to examine the other medical

5

source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still

entitled to deference and must be weighed using all of the

following factors:

(1) the length of the treatment relationship and the frequency
of examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area
upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

    The only issue raised by the plaintiff concerns plaintiff's

mental impairments and limitations.  The ALJ's mental RFC

findings limit plaintiff to simple, routine tasks (R. at 18).

Dr. Nystrom, a licensed psychologist, conducted a mental health

examination on the plaintiff on December 13, 2010 (R. at 344-

346).  Dr. Nystrom diagnosed plaintiff with alcohol dependence,

adjustment disorder and personality disorder.  He concluded as

follows:

          There was no psychological disorder
          identified that would prevent her from being

7

> able to understand and remember simple
> instructions; be capable of sustained
> concentration, persistence, and keeping pace
> in a work setting.  She would be able to
> maintain appropriate social interactions
> with coworkers, supervisors, and the general
> public.

(R. at 346).

The first state agency mental RFC assessment by a non-examining physician was done by Dr. Snyder on January 25, 2011 (R. at 54-55, 58-59).  After reviewing the records, he opined that plaintiff had marked difficulties in maintaining social functioning (R. at 54).  He specifically opined that plaintiff had marked limitations in dealing with the public and with supervisors.  She would be moderately limited in getting along with coworkers, and moderately limited in the ability to maintain socially appropriate behaviors and adhering to basic standards of neatness and cleanliness.  He further opined that plaintiff is moderately limited in the ability to respond appropriately to changes in the work setting.  He concluded by indicating that plaintiff's frustration tolerance and stress tolerance are low, and would probably be worsened by physical pain, interpersonal issues, and fast-paced and/or high production work quotas.  He recommended no public contact and very little coworker/supervisor contact, and no negotiation/confrontation (R. at 58-59).

The second state agency mental RFC assessment by a non-examining physician was done by Dr. Wilkinson on July 5, 2011 (R. at 39-40, 44-45).  She opined that plaintiff had moderate difficulties in maintaining social functioning (R. at 40).  She more specifically opined that plaintiff had moderate limitations in the ability to deal with the public, supervisors and coworkers.  She also indicated that plaintiff had moderate limitations in the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and to changes in the work setting.  She concluded by indicating that plaintiff's frustration tolerance and stress tolerance are low, and would probably be worsened by physical pain, interpersonal issues, and fast-paced and/or high production work quotas.  He recommended no public contact and very little coworker/supervisor contact, and no negotiation/confrontation (R. at 44-45).

The ALJ stated that he considered all three opinions, but gave more weight to the opinion of Dr. Nystrom because he was an examining source.  The ALJ noted that Dr. Snyder and Dr. Wilkinson reviewed plaintiff's records, but gave little weight to the opinions of Dr. Wilkinson and Dr. Snyder (R. at 23).

Plaintiff argues that the ALJ erred by not giving greater weight to the non-examining medical sources because their opinions are more consistent with each other, and because they

had access to the entire record available at the time in which
they offered their opinions.  The court will not reweigh the
evidence or substitute its judgment for that of the
Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th
Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th
Cir. 2002).  Although the court will not reweigh the evidence,
the conclusions reached by the ALJ must be reasonable and
consistent with the evidence.  See Glenn v. Shalala, 21 F.3d
983, 988 (10th Cir. 1994)(the court must affirm if, considering
the evidence as a whole, there is sufficient evidence which a
reasonable mind might accept as adequate to support a
conclusion).  The court can only review the sufficiency of the
evidence.  Although the evidence may support a contrary finding,
the court cannot displace the agency's choice between two fairly
conflicting views, even though the court may have justifiably
made a different choice had the matter been before it de novo.
Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

     As noted above, the opinions of examining physicians are
generally entitled to greater weight to the opinion of a non-
examining physician.  In appropriate circumstances, opinions
from non-examining medical sources **may** be entitled to greater
weight than the opinions of treating or examining sources.  SSR
96-6p, 1996 WL 374180 at *3 (emphasis added).  However, the

court will not reweigh the evidence.  The ALJ could reasonably give greater weight to the examining source.

**IV.  Did the ALJ err by not finding that plaintiff suffered from a personality disorder?**

At step two, the ALJ found that plaintiff suffered from affective disorder and substance abuse.  The ALJ did not make a finding that plaintiff suffered from a personality disorder. Dr. Nystrom, Dr. Snyder and Dr. Wilkinson all diagnosed plaintiff with a personality disorder (R. at 346, 54, 39-40). Dr. Nystrom also diagnosed adjustment disorder and alcohol dependence (R. at 346), while Dr. Snyder and Dr. Wilkinson diagnosed affective disorder and alcohol/substance abuse disorder (R. at 54, 39-40).  The ALJ gave great weight to the opinion of Dr. Nystrom in making his RFC findings (R. at 23). Thus, the ALJ gave great weight to the opinion of a treating source whose diagnoses included personality disorder.

The ALJ in his decision stated that he considered all the evidence, and specifically referenced and gave great weight to the opinions of Dr. Nystrom.  The opinions of Dr. Nystrom were based on a number of diagnoses, including personality disorder. In light of the fact that the ALJ's decision gave great weight to the opinions of Dr. Nystrom, and Dr. Nystrom's diagnoses included personality disorder, the court finds that the ALJ adequately considered all of plaintiff's mental impairments,

including personality disorder.  The ALJ's failure to specifically mention the impairment of personality disorder, on the facts of this case, is, at best, harmless error.

**V.   Did the ALJ err by failing to consider whether plaintiff's impairments met or equaled listed impairment 12.08 (personality disorders)?**

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). In order for the plaintiff to show that his impairments match a listing, plaintiff must meet "all" of the criteria of the listed impairment.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

In his decision, the ALJ did not discuss listed impairment 12.08.  Plaintiff has presented no evidence that plaintiff's impairments meet or equal listed impairment 12.08.  There is no medical opinion evidence in the record that this listed impairment is met or equaled.  In fact, both Dr. Snyder and Dr. Wilkinson opined that plaintiff's listed impairments did not meet the criteria of listed impairment 12.08 (R. at 54-55, 40).

Plaintiff has the burden to present evidence establishing that her impairments meet or equal a listed impairment.  In

light of the medical opinion evidence that the criteria of
listed impairment 12.08 are not met in this case, and the
absence of any medical evidence that demonstrates that the
criteria of listed impairment 12.08 is met or equaled in this
case, the court finds that the ALJ did not err by not discussing
listed impairment 12.08.

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is affirmed pursuant to sentence four of 42 U.S.C.
§ 405(g).

Dated this 24th day of March, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge